## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

H.U.C.U. and M.G.B.V, on their own behalfs and
on behalf of their biological daughter, G.M.C.B. as
her next friend,

*Plaintiffs*,

-against-

William P. BARR, Attorney General of the United
States; Kevin K. MCALEENAN, Acting Secretary,
U.S. Department of Homeland Security;
John SANDERS, Acting Commissioner, U.S.
Customs and Border Protection; Alex M. AZAR II,
Secretary, U.S. Department of Health and Human
Services; Jonathan HAYES, Acting Director,
Office of Refugee Resettlement; Hector A.
MANCHA, JR., El Paso Director of U.S. Customs
and Border Protection Field Operations;  and JOHN
and JANE DOES # 1-5 CBP Officers at the Clint
Border Facility,

*Defendants*.

Case: 1:19-cv-01964
Assigned To : Bates, John D.
Assign. Date : 7/1/2019
Description: TRO/Prelim. Injunct. (D-DECK)

**PETITION FOR JUDICIAL REVIEW
OF PLACEMENT DETERMINATION
PURSUANT TO FLORES
SETTLEMENT AGREEMENT**

**COMPLAINT SEEKING
DECLARATORY AND INJUNCTIVE
RELIEF**

## INTRODUCTION

1.      This case challenges the placement decision by the United States government with regard

to Plaintiff G.M.C.B., an inconsolable seven-year old girl who on June 15, 2019 was separated

from her aunt and caretaker and thereafter unlawfully held in custody of U.S. Customs and

Border Protection ("CBP") at the Clint Border Patrol Station in Clint, Texas for ten days, far in

excess of the time permitted by law, and in horrific, abusive and neglectful conditions that have

been widely reported in the media.  G.M.C.B. was transferred late in the evening on June 25,

2019 to an Office of Refugee Resettlement ("ORR") program Upbring Transitional Foster Care.

Plaintiffs, H.U.C.U. and M.G.B.V. are G.M.C.B.'s parents, both in the United States ready and

1

available to care for their daughter, and actively seek reunification of their family.  G.M.C.B. has

improperly been designated as an unaccompanied minor ("UAC") for no legitimate or lawful

reason, and ORR therefore has no statutory authority in any respect as to G.M.C.B.  Finally,

G.M.C.B. has been treated with deliberate cruelty and indifference to her physical and emotional

well-being in violation of the law and the special protections afforded to minors in the custody of

United States immigration authorities.

2.      During the ten days that G.M.C.B. was in the care, custody and control of the CBP, and

despite knowing her parent's contact information and location, no efforts were made by any

governmental official to place G.M.C.B. with her parents who reside in the United States in

Washington D.C.  Rather, G.M.C.B. was subjected to deplorable, unsafe, and unsanitary

condtions during a prolonged and unlawful period of CBP detention.  She lacked adequate food

and supervision, enduring profound emotional trauma and distress. At one point, G.M.C.B. was

unconscionably punished for losing a comb – one of two combs provided to a room full of

children to address a lice infestation – by a CBP officer.  The officer yelled at G.M.C.B., and,

cruelly and unusually, punished the entire cell of jailed children by removing blankets and

forcing the children, including seven-year old G.M.C.B. who had been diagnosed with the flu to

sleep uncovered on a cold tile floor.

3.      G.M.C.B. began to become dizzy and ill while in the Clint facility, where she received

little food, and contracted influenza A in detention. She would only be removed from this

torturous facility following media reports shed light on the horrible treatment of the nearly 300

children in the Clint facility, many of whom, like G.M.C.B., had been separated from relatives,

and then unnecessarily and unlawfully subjected to degrading, unsafe, and traumatic conditions.

However, upon being removed from the Clint facility, G.M.C.B. was not allowed to reunite with

her parents as required by law; rather she continues to be separated from them compounding her

suffering, and held by ORR, an agency with no statutory authority to detain or condition her

release from government detention. G.M.C.B. must be immediately reunited with her parents.

4.      This is an individual action on behalf of G.M.C.B. pursuant to Paragraph 24B of the

Flores Settlement Agreement (hereinafter "FSA" or the "Settlement"), arising from longstanding

litigation in the matter of *Flores v. Sessions*, CV-85-4544 (C.D. Cal.). The Settlement gives

Plaintiff G.M.C.B., a minor child, the right to challenge the improper and unlawful decision of

the Department of Homeland Security ("DHS") to place her in the custody of the ORR in

transitional foster care at Upbring in El Paso, Texas, rather than reunifying her with her parents

in the United States as is required by law.

5.      The government in this case utterly failed to comply, or even attempt to comply, with its

obligations under the FSA in nearly all respects most notably by: failing to (a) make and record a

*prompt and continuous* effort toward family reunification and release; (b) release G.M.C.B.

without unnecessary delay in accordance with the FSA order of preference, which *begins* with

parents and *ends* with placement in a juvenile facility or foster setting; (c) treat this little girl with

any dignity, respect and special concern for her vulnerability as a seven year old asylum-seeking

child; (d) hold this child in a facility that was safe and sanitary as required by the FSA; (e)

provide access to toilets and sinks, drinking water and food as appropriate, medical assistance,

adequate temperature control and ventilation, adequate supervision and contact with her family

members who were requested protection with her; or (f) uphold their promise and obligation to

expeditiously process this seven-year old child or provide her with a notice of her rights.

6.      Further, G.M.C.B. files this action against the United States government and its actors to

ask this Honorable Court to determine and declare that she is not an "unaccompanied child"

under the meaning of the Trafficking Victims Protection Reauthorization Act ("TVPRA") and

order her immediate release to her parents pursuant to paragraph 24B of the Flores Settlement

Agreement which permits any child to challenge the government's improper placement decision

in a federal district court with jurisdiction and venue. Because G.M.C.B. is not an

unaccompanied child, the Department of Health and Human Services, Office of Refugee

Resettlement has wrongfully placed her in transitional foster care even though she has both

parents ready and available to take custody of her and provide for her care. Her continued

detention violates not only a consent decree and a statutory framework for unaccompanied

children, but it violates her substantive due process rights to liberty and her and her family's

reciprocal rights to family integrity.

7.      Since 1997, the Flores Settlement Agreement, a consent decree between children and the

United States government, established a legal framework that all minors in immigration custody

shall be treated with "dignity, respect and special concern for their particular vulnerability as

minors." CBP's arbitrary and unlawful decision to hold G.M.C.B., a seven-year old girl, in a

border jail for ten days and failing to, at any point, engage in placement efforts pursuant to the

FSA, violated the conditions of the consent decree. In addition, the decision by DHS and the

U.S. Department of Health and Human Services ("HHS") to transfer G.M.C.B. to transitional

foster care rather than immediately release her to her biological parents violates the Due Process

Clause of the Fifth Amendment which does not, and cannot, permit the United States

government to keep this child locked up, away from her parents, and her parents from their child.

8.      The FSA contemplated a moment in history where DHS would ignore its obligations

under the Settlement and the Constitution. That moment clearly has arrived. Incidents widely

reported on the border as well as demonstrated in the instant complaint depict the rampant and

malevolent mistreatment of children in the custody of the defendants along the border, in some

instances tantamount to torture.  G.M.C.B. was detained at the Clint Border Patrol Station, a

facility now infamous for its mistreatment of children.[1]

9.       Paragraph 24B of the Settlement contemplates the government's inability to properly

follow the agreement in individual cases, and provides a remedy to the most vulnerable of those

in immigration custody, namely, a voice to an inconsolable seven-year old child to contest the

horrific treatment she has been subjected to by Defendants, and to challenge the unsanctioned

decision of the federal government to prevent her from returning to the care and custody of her

mother and father.

---

[1] "Clara Long, a senior researcher for Human Rights Watch, described what she said were 'unconscionable conditions' at a Border Patrol station in Clint, Texas, where unaccompanied minors were being held. 'The kids had colds and were sick and said they didn't have access to soap to wash their hands. It was an alcohol-based cleanser. Some kids who were detained for 2-3 weeks had only one or two opportunities to shower. One said they hadn't showered in three weeks,' she said. 'Hygiene and living conditions like this creates a risk of spreading infectious disease. It makes me very concerned about the public health emergency.'" *Lack of soap, filthy onesies and too few beds have created a 'health crisis' at border detention facilities, monitors warn, CNN* (June 21 2019) avaukable at: https://www.cnn.com/2019/06/20/politics/border-detention-facilities-health/index.html.

"A 2-year-old boy locked in detention wants to be held all the time. A few girls, ages 10 to 15, say they've been doing their best to feed and soothe the clingy toddler who was handed to them by a guard days ago. Lawyers warn that kids are taking care of kids, and there's inadequate food, water and sanitation for the 250 infants, children and teens at the Border Patrol station.

The bleak portrait emerged Thursday after a legal team interviewed 60 children at the facility near El Paso that has become the latest place where attorneys say young migrants are describing neglect and mistreatment at the hands of the U.S. government.

Data obtained by The Associated Press showed that on Wednesday there were three infants in the station, all with their teen mothers, along with a 1-year-old, two 2-year-olds and a 3-year-old. There are dozens more under 12. Fifteen have the flu, and 10 more are quarantined.

Three girls told attorneys they were trying to take care of the 2-year-old boy, who had wet his pants and had no diaper and was wearing a mucus-smeared shirt when the legal team encountered him.

"A Border Patrol agent came in our room with a 2-year-old boy and asked us, 'Who wants to take care of this little boy?' Another girl said she would take care of him, but she lost interest after a few hours and so I started taking care of him yesterday," one of the girls said in an interview with attorneys.

. . .

Children told lawyers that they were fed oatmeal, a cookie and a sweetened drink in the morning, instant noodles for lunch and a burrito and cookie for dinner. There are no fruits or vegetables. They said they'd gone weeks without bathing or a clean change of clothes." *Attorneys: Texas border facility is neglecting migrant kids*, AP (June 21, 2019) (https://www.apnews.com/46da2dbe04f54adbb875cfbc06bbc615).

## SUBJECT MATTER JURISDICTION

10.    This case arises under the FSA, a consent decree to which the United States government

is a party and G.M.C.B. is a protected class member. This Court has jurisdiction pursuant to ¶

24(B) of the Flores Agreement; 28 U.S.C. § 1331 (federal question jurisdiction with a waiver of

sovereign immunity pursuant to the Administrative Procedure Act, 5 U.S.C. §701 et seq.); and

28 U.S.C. § 1346 (United States as defendant). Jurisdiction lies to grant declaratory relief

pursuant to 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act).

## VENUE

11.    Plaintiff G.M.C.B. is presently detained in the custody of the HHS-ORR (via her

placement in transitional foster care at Upbring, a non-profit facility contracted by ORR to

provide such services to children designated as unaccompanied) rather than reunified with her

parents, Plaintiffs H.U.C.U. and M.G.B.V., who reside in Washington, D.C.

12.    Venue in the District Court for the District of Columbia is proper pursuant to the FSA

consent decree which protects G.M.C.B. as a class member and provides that she "may seek

judicial review in any United States District Court with jurisdiction and venue over the matter"

to challenge both her placement by DHS and the conditions of her placement.  Further venue is

proper in this District pursuant to 28 U.S.C. § 1391(e) because the defendant federal agencies are

headquartered in this District.

## PARTIES

13.    Plaintiff G.M.C.B. is a seven-year-old minor child. This action is brought on her behalf,

by her parents, Plaintiffs H.U.C.U. and M.G.B.V., as next friends.  Plaintiffs H.U.C.U. and

M.G.B.V. have "next friend" standing to bring this action because G.M.C.B. is a minor and

Plaintiffs H.U.C.U. and M.G.B.V., as her parents are dedicated to act in her best interests. *See*

*Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990) ("First, a 'next friend' must provide an

adequate explanation . . . why the real party in interest cannot appear on his own behalf to prosecute the action. Second, the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate").  G.M.C.B. is currently detained by the Defendants.

14.     Plaintiffs Mr. H.U.C.U. and Ms. M.G.B.V are the biological parents of G.M.C.B. and are living in domestic partnership in Washington, D.C.

15.     Defendant William P. Barr is the Attorney General of the United States and the head of the United States Department of Justice ("DOJ"). The DOJ is the federal agency responsible for the administration and enforcement of the immigration laws, and for advising the relevant federal Departments and agencies of their duties under the law. He is sued in his official capacity.

16.     Defendant, Kevin K. McAleenan is the Acting Secretary of the Department of Homeland Security ("DHS"), the Department of the Executive Branch of the United States government that oversees the agencies responsible for enforcing the immigration laws of the United States. Defendant McAleenan is the head of DHS and has ultimate responsibility for the administration and enforcement of the immigration laws by DHS agencies. In that capacity, Defendant McAleenan has direct authority over all policies, procedures and practices relating to the apprehension of immigrant children at the United States border and the decisions by DHS to designate children as "unaccompanied." He is sued in his official capacity.

17.     Defendant John Sanders is the Acting (outgoing) Commissioner of U.S. Customs and Border Protection ("CBP"), the agency within DHS that is responsible for the initial processing and detention of noncitizens apprehended near the United States Border. In that capacity, Defendant Sanders has direct authority over all CBP policies, procedures and practices relating to the apprehension of immigrant children at the United States border and the decisions by CBP to designate children as "unaccompanied." He is sued in his in official capacity.

7

18.     Defendant Alex M. Azar II is the Secretary of the U.S. Department of Health and Human Services ("HHS"), the Department of the Executive Branch of the United States government that oversees the division and office responsible for the care and custody of minors detained without their parents. Defendant Azar is the head of HHS, and has ultimate responsibility for the physical care and daily detention of minors in the custody of immigration authorities without their parents. He is sued in his official capacity.

19.     Defendant Jonathan Hayes is the Acting Director of the Office of Refugee Resettlement ("ORR"), the office within the Administration for Children and Families (a division of HHS) that is responsible for providing care and placement for children detained by the United States government without their parents. In that capacity, Defendant Hayes has direct authority over all ORR policies, procedures and practices relating to the physical care and daily detention of minors detained without parents in ORR facilities. He is sued in his official capacity.

20.     Defendant Hector A. Mancha, Jr., is the El Paso Director of CBP Field Operations. He exercises authority over CBP detention and enforcement activities in the El Paso sector. He is sued in his official capacity.

21.     Defendants John and Jane Does numbers 1-5 are the CBP Officers responsible for G.M.C.B.'s custody at the Clint Border Patrol Station and Border Patrol Station 1 during her prolonged and unlawful detention from June 15, 2019 through June 25, 2019. They are sued in their official capacity.

## NOTICE REQUIRED BY THE FLORES SETTLEMENT AGREEMENT

22.     On June 26, 2019, counsel for the Plaintiff contacted the Office of the U.S. Attorney for the District of Columbia via telephone (spoke with Mr. Daniel F. VanHorn, Chief of the Civil Division) and facsimile, and provided notice of FSA violations as required by Paragraph 37 of the FSA, copying the Center for Constitutional Law, the National Center for Youth Law, the

Office of the U.S. Attorney for the Central District of California, and the Office of Immigration

Litigation at the Department of Justice. The widespread and deliberate nature of the

government's violations as thousands of children are being affected by the horrific conditions at

the border suggests that the government is already well aware of these violations, and that any

delay will be an exercise in futility that will only further irreparably harm the Plaintiffs. [Exhibit

A – Required Notices to Parties Pursuant to FSA ¶ 37] Counsel further provided a courtesy copy

of the notice letter directly to Sarah B. Fabian, a Senior Litigator with the DOJ's Office of

Immigration Litigation, also on June 26, 2019.

### LEGAL FRAMEWORK OF THE FLORES SETTLEMENT AGREEMENT

23.     On January 28, 1997, a class-wide settlement agreement was reached in a case that is

presently captioned *Flores v. Sessions*, CV-85-4544 (C.D. Cal.) (Flores Agreement). According

to the stipulation of the parties in that Settlement, the terms of the FSA are in effect and remain

in effect until the 45th day "following defendants' publication of final regulations implementing"

the Settlement itself. Regulations have never been published. [Exhibit B – Flores Settlement

Agreement]

24.     The FSA applies to "[a]ll minors who are detained in the legal custody of the INS." *See*

Flores Agreement ¶ 10.  A "minor" is "any person under the age of eighteen (18) years who is

detained in the legal custody of the INS." *See id.* ¶ 4.

25.     The FSA "sets out nationwide policy for the detention, release, and treatment of minors

in the custody of the INS[.]" See id. ¶ 9. The immigration authorities must treat "all minors in its

custody with dignity, respect and special concern for their particular vulnerability as minors."

*See id.* ¶ 11.

26.     Each Defendant is subject to compliance under the FSA.  G.M.C.B. is *Flores* class

member as a minor detained in the legal custody of the immigration authorities.

27.    The FSA applies to <u>all minors</u> in immigration custody, regardless of whether the child is designated as unaccompanied. *See Flores v. Lynch,* 828 F.3d 898, 905-6 (9th Cir. 2016)

**Paragraph 11 Protections:**

28.    Paragraph 11 of the FSA requires that "[t]he INS treats, and shall continue to treat, all minors in its custody with dignity, respect and special concern for their particular vulnerability as minors. The INS shall place each detained minor in the least restrictive setting appropriate to the minor's age and special needs, provided that such setting is consistent with its interests to ensure the minor's timely appearance before the INS and the immigration courts and to protect the minor's well-being and that of others."

**Paragraph 12 Protections:**

29.    Paragraph 12 of the FSA requires "Whenever the INS takes a minor into custody, it shall expeditiously process the minor and shall provide the minor with a notice of rights, including the right to a bond redetermination hearing if applicable. Following arrest, the INS shall hold minors in facilities that are safe and sanitary and that are consistent with the INS's concern for the particular vulnerability of minors. Facilities will provide access to toilets and sinks, drinking water and food as appropriate, medical assistance if the minor is in need of emergency services, adequate temperature control and ventilation, adequate supervision to protect minors from others, and contact with family members who were arrested with the minor."

30.    Defendants were required by law to expeditiously process G.M.C.B. to hold her only in facilities that are safe and sanitary, and that are consistent with the government's claimed concern for the particular vulnerability of minors. The government Defendants were required to provide G.M.C.B. with access to toilets and sinks, drinking water and food as appropriate, medical assistance, adequate temperature control and ventilation, adequate supervision for her

protection, and contact with family members who were arrested with her (in this case, her aunt). With the exception of a hospital visit to confirm that G.M.C.B. had contracted influenza A in detention, the government Defendants utterly failed to uphold their legal obligations to G.M.C.B. Indeed, she was held in a room with an active lice infestation, and then punished for the loss of a lice comb the room full of children were expected to *share* by being cruelly and unusually stripped of blankets and bedding, and forced to sleep on a cold tile floor – during the period she was infected with influenza A.

### Paragraph 14 Protections:

31.     At all times, the Defendants must seek and work to release a minor. "Where the INS determines that the detention of the minor is not required either to secure his or her timely appearance before the INS or the immigration court, or to ensure the minor's safety or that of others, the INS shall release a minor from its custody without unnecessary delay[.]" *See id*. ¶ 14.

32.     Under the Flores Agreement, the release of the class member to his or her parent is the primary objective. *See id*. ¶ 14. Family unity is always the preferred option.

33.     Paragraph 14 of the FSA requires "Where the INS determines that the detention of the minor is not required either to secure his or her timely appearance before the INS or the immigration court, or to ensure the minor's safety or that of others, the INS shall release a minor from its custody without unnecessary delay, in the following order of preference, to:

    a.  a parent;
    b.  a legal guardian;
    c.  an adult relative (brother, sister, aunt, uncle, or grandparent);
    d.  an adult individual or entity designated by the parent or legal guardian as capable and willing to care for the minor's well-being in (i) a declaration signed under penalty of perjury before an immigration or consular officer or (ii) such other document(s) that establish(es) to the satisfaction of the INS, in its discretion, the affiant's paternity or guardianship;

e.  a licensed program willing to accept legal custody; or

f.  an adult individual or entity seeking custody, in the discretion of the INS,
    when it appears that there is no other likely alternative to long term detention
    and family reunification does not appear to be a reasonable possibility."

34.     Plaintiffs H.U.C.U. and M.G.B.V. ("Parents") are the biological parents of G.M.C.B. and

domestic partners to one another who live in Washington, D.C. At all times relevant to this

complaint, G.M.C.B.'s parents have always been, and continue to be, available to provide care to

and take custody of their child "in the United States." But for the interference of the unlawful

placement decision by the government Defendants, they would be with their daughter at this

instant.

35.     There were no attempts to reunify G.M.C.B. with her parents, as required under the FSA.

Rather, the Defendants willfully violated their legal obligations by designating G.M.C.B. as

unaccompanied and transferring her to ORR to be placed in transitional foster care at Upbring.

G.M.C.B. is, at this instant, with someone else's family in foster care in El Paso, Texas.

36.     The arbitrary and capricious placement decision made by the Defendants was not based

on any objective discretionary determination but rather based on a blanket policy of designating

any child detained without an accompanying parent as an "unaccompanied child" despite the fact

that such a policy is inconsistent with the clear language of the TVPRA and results in violations

of the family's Constitutional right to family integrity.

37.     In essence, the government Defendants' wrongful designation of G.M.C.B. as an

unaccompanied child in violation of the definitional language of the TVPRA directly resulted in

her placement in ORR custody and an additional, burdensome reunification process without legal

justification.

### Paragraph 18 Protections:

38.     Paragraph 18 of the FSA instructs the Defendants that "Upon taking a minor into custody, the [legacy] INS, or the licensed program in which the minor is placed, shall make and record the ***prompt and continuous efforts on its part toward family reunification and the release of the minor pursuant to Paragraph 14 above***. Such efforts at family reunification shall continue so long as the minor is in INS custody.

39.     Defendants failed to begin prompt and continuous efforts at family reunification upon apprehension of this seven year old girl. In fact, they failed in any way to comply with the Settlement for the 10 days that G.M.C.B. languished in a border jail where she was cold, poorly fed, mistreated, unkempt, unshowered, inconsolably weeping and cruelly castigated by a CBP officer for losing a comb before being forced to sleep on a cold tile floor without a blanket as punishment. This was apparently the placement Defendants preferred. Meanwhile, G.M.C.B. wore around her wrist a green wristband with her father's phone number and the words "US PARENT." However, despite the fact that CBP called H.U.C.U., confirmed that he was G.M.C.B.'s father available in the United States, and permitted him to speak with her (until telling him that he was no longer allowed to speak with her for questioning the inhumane treatment she was subjected to as punishment for misplacing a comb). CBP never at any time attempted to arrange for him to pick up his daughter. Instead, Plaintiff H.U.C.U. was told that he would have to wait until G.M.C.B. was placed in ORR – unlawfully – to attempt to be reunited with his suffering seven-year girl.

### Paragraph 24B Protections:

40.     The Flores Agreement authorizes class members to challenge the placement and custodial decision regarding the minor in "any United States District Court with jurisdiction and venue

over the matter to challenge that placement determination or to allege noncompliance with the standards set forth in Exhibit 1." *See id.* ¶ 24B of the FSA.

41.     The standard of review for placement decisions is "*de novo.*" *See* ¶ 24C of the FSA.

42.     G.M.C.B. contests the decision of DHS to place her in the custody of ORR based on her wrongful designation by CBP that she is an unaccompanied child, which is contray to law.

**Paragraph 36 Protections:**

43.     The FSA also provides a reservation of rights provision which permits a class member to exercise any "independent rights" she may have as contemplated by the settlement. *See* ¶ 36 of the FSA: "Nothing in this agreement shall limit the rights, if any, of individual class members to preserve issues for judicial review in the appeal of an individual case or for class members to exercise any independent rights they may otherwise have."

44.     Plaintiffs' fundamental rights to family integrity were grossly violated when the government Defendants failed to reunify them as required by the FSA, knowing that G.M.C.B. was not properly designated as a UAC.

### THE HOMELAND SECURITY ACT AND
### THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT

45.     In 2002, Congress enacted the Homeland Security Act (the "HSA"), 6 U.S.C. § 279.  The HSA transferred a number of the functions relating to the care of unaccompanied minors from the former INS to the Director of [ORR] of the Department of Health and Human Services. As relevant here, the HSA sets forth the definition of "unaccompanied alien child" ("UAC"). Under § 279(g)(2), a UAC is a child who: (A) has no lawful immigration status in the United States; (B) has not attained 18 years of age; and (C) with respect to whom—(i) there is no parent or legal

guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody.

46.     The framework of and rationale for the statute comports with the significant procedural safeguards that traditionally accompany attempts by the Government to intervene in the relationship between a parent and child. *See, e.g., Stanley v. Illinois*, 405 U.S. 645, 658 (1972) (holding that "parents are constitutionally entitled to a hearing on their fitness before their children are removed from their custody").

47.     In order to meet the statutory definition of a UAC each of the three prongs—(A), (B), and (C) must be met. Here, prong (A) appears to be met because G.M.C.B. is without lawful immigration status. Likewise, prong (B) is met because the child is only seven years old. However, prong (C) fails because G.M.C.B. has had, at all times relevant to this Complaint, two parents in the United States available and willing to provide care and physical custody to their daughter. Id. § 279(g)(2)(C)(ii).The HSA makes ORR responsible for "making placement determinations for all [UACs] who are in Federal custody by reason of their immigration status." 6 U.S.C. § 279(b)(1)(C).

48.     Based on a plain reading of the definition above G.M.C.B. is not an unaccompanied minor. Therefore, ORR has no basis for taking custody of her no authority to detain her, and certainly no authority to withhold custody of her from her parents. Every second of her continued detention is unlawful. As G.M.C.B. is not an unaccompanied minor she must immediately be reunified with her parents by the Defendants.

## LEGAL FRAMEWORK FOR CONSTITUTIONAL DEPRIVATIONS

49.     Plaintiff G.M.C.B., again, a seven-year old child, has been – and continues to be – unlawfully "in custody" for civil immigration purposes without having been provided a constitutionally adequate process to justify considerable intrusions into her liberty and property

rights. The government Defendants' process of blanket designation of any child at the Southern

border presenting without a parent as "unaccompanied" (in which the government errs as a

matter of law) is unlawful, their treatment of children at the southern border abusive and

abhorrent, and their callousness has shocked the conscience of the nation.

50.     "The Due Process Clause 'imposes constraints on governmental decisions which deprive

individuals of "liberty" or "property" interests within the meaning of the Fifth Amendment."

*Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)).

51.     The Due Process Clause "applies to all 'persons' within the United States, including

aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zavydas v.*

*Davis*, 533 U.S. 678, 693 (2001). This includes a vulnerable seven-year old girl unlawfully being

held in the custody of the government Defendants.

52.     In evaluating alleged violations of procedural due process arising under the Fifth

Amendment, the courts employ the balancing test set forth by the Supreme Court in *Mathews v.*,

424 U.S. at 332.

53.     Under the *Mathews* framework, a court must consider: "First, the private interest that will

be affected by the official action; second, the risk of an erroneous deprivation of such interest

through the procedures used, and the probable value, if any, of additional or substitute procedural

safeguards; and finally, the Government's interest, including the function involved and the fiscal

and administrative burdens that the additional or substitute procedural requirement would entail."

424 U.S. at 335.

54.     The Supreme Court has made clear that parents have a fundamental liberty interest in

family integrity, and in the care, custody, and control of their children. *See Troxel v. Granville*,

530 U.S. 57, 65-66 (2000) ("The liberty interest at issue in this case – the interest of parents in

the care, custody, and control of their children – is perhaps the oldest of the fundamental liberty interests recognized by this Court."); *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978) ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected."); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972).

55.    Rather than placing G.M.C.B. in the least restrictive setting, Defendants have continued to withhold custody of this child from her parents in a manner that absolutely prevents her parents from providing care to, or exercising custody and control over, their daughter. G.M.C.B. therefore can demonstrate that Defendants' actions substantially encroach on her fundamental right to family integrity.

56.    It is not precisely clear what the Government interest to be weighed against Petitioners' interests are, or if there in fact are any. The government undoubtedly has an interest in the constitutional application of law. "It is, after all, not the Department of Prosecution but the Department of Justice . . . . [T]he interest of the Government . . . is not that it shall win a case, but that justice shall be done." *Doe v. United States*, No. 17-1841 (2d Cir. Feb. 14, 2019) citing Robert F. Kennedy, Att'y Gen., Address to the National Conference on Bail and Criminal Justice 2 (May 29, 1964) (available in the John F. Kennedy Library).

57.    Under the APA, "final agency action for which there is no other adequate remedy in court [is] subject to judicial review." 5 U.S.C. §704. The reviewing court "shall ... hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. §706(2)(A),(E). The designation of G.M.C.B. as a UAC was plainly an arbitrary and capricious decisions that has prejudiced her family's rights to family unity as well

17

as her right to liberty – the government has no authority to detain G.M.C.B. as ORR has no authority with respect to G.M.C.B. unless she is properly designated as a UAC.

58.     Defendants violated the rights of the Plaintiffs, most specifically a seven-year old child who was forced to suffer to her physical and mental detriment horrendous conditions of confinement because the Defendants failed in their minimal obligations to provide safe and sanitary conditions, to treat children with dignity and respect, and to upon apprehending a child, attempt to reunify her with her parents. In doing so, and continuing to do so, the government has violated her independent rights under the FSA and the Due Process Clause of the Fifth Amendment.

59.     The Plaintiffs, as a biological family unit, have a fundamental right to family integrity under the Due Process Clause of the Fifth Amendment to be together. G.M.C.B. has the right to be comforted and loved by her mother and father as they are willing and able to care for her - rather than subject her to continued foster care or having subjected her to border facility conditions such as a "hielera" [icebox] or those described by the affiants and those descriptions in media reports.

## FACTS

60.     G.M.C.B. is a seven-year-old girl. She is a native and citizen of El Salvador. She is an asylum-seeking child.

61.     G.M.C.B.'s parents reside in Washington, D.C. and are available, now and at all times since G.M.C.B. has been in the United States, to provide care for and take custody of their daughter.

62.     G.M.C.B. was cared for by her aunt in El Salvador. Their household became subject to severe domestic violence endangering G.M.C.B. and her aunt's safety. G.M.C.B. describes that

there were "people who had eyes on her," and that she was no longer safe going to school. As a result, they came to the border of the United States to seek asylum.

63.     On or about June 15, 2019, G.M.C.B. was apprehended by CBP with her aunt and a female cousin. Their family had sought out U.S. border officials to turn themselves in. That night G.M.B.C. and her aunt were made to sleep on the floor of a tent. When G.M.C.B. awoke, her aunt was no longer by her side.  [Exhibit C – Declaration of Katherine Hagan at ¶ 5].

64.     Thereafter, G.M.B.C. was instructed. to get into a car by herself. She was not permitted to remain with her aunt or her cousin. Reflecting upon this moment causes G.M.B.C. great trauma and pain, as she is often unable to talk about this moment without intense emotion and crying. *Id.*

65.     G.M.B.C. was placed in the Clint Border Station in Clint, Texas following this period in a tent. On information and belief, this occurred on June 16, 2019. While she was detained at this border station, she was without her accompanying family and was placed with hundreds of other children in deplorable conditions.

66.     In detention, her wrist was adorned by a green wristband. On the wristband were written the words "US PARENT" and accompanying that phrase was her father's phone number in the United States. [Exhibit D –Declaration of Clara Long].  CBP knew at all times that G.M.C.B. had parents in the United States, and failed to use that information to timely conduct a proper placement.

66.     Monitors operating pursuant to the FSA were granted access to the facility and conducted inspections on or about the week of June 17, 2019. "The situation we found is unacceptable. US Border Patrol is holding many children, including some who are much too young to take care of themselves, in jail-like border facilities for weeks at a time without contact with family members, regular access to showers, clean clothes, toothbrushes, or proper beds. Many are sick. Many,

including children as young as 2 or 3, have been separated from adult caretakers without any

provisions for their care besides the unrelated older children also being held in detention···Some

of the children we spoke with were sleeping on concrete floors and eating the same unpalatable

and unhealthy food for close to a month: instant oatmeal, instant soup and a previously-frozen

burrito. Children should spend no more than a few hours in short-term border jails to be

processed and US law limits their detention under typical circumstances to 72 hours." *See*

https://www.cnn.com/2019/06/24/opinions/children-migrant-centers-at-border-long-austin-

hillery/index.html.

67.     The inspectors noted that many of the children in Clint, like the Plaintiff, have family and

even parents in the United States.   "Based on our interviews, officials at the border seem to be

making no effort to release children to caregivers-- many have parents in the US -- rather than

holding them for weeks in overcrowded cells at the border, incommunicado from their desperate

loved ones." *Id*.2

---

2 Media reports are replete with articles describing the horrendous conditions in Clint. Many are referenced in
Foonote 1. In addition, Elora Mukherjee, a professor at Columbia Law School and the director of the school's
Immigrants' Rights Clinic provided a first hand account to the Atlantic, " **Children were dirty, They Were Scared,
They Were Hungry**." She provided her observations, "An overwhelming number of children who I interviewed had
not had an opportunity for a stable shower or bath since crossing the border [days or weeks earlier]. They **were
wearing the same clothing that they had crossed the border in**. Their clothing **was covered in bodily fluids,
including urine and breast milk for the teenage moms who are breastfeeding.**

**Nearly every child I spoke with said that they were hungry because they're being given insufficient food**. The
food at Clint is rationed on trays. Everyone gets an identical tray regardless of if you're a 1-year-old, or you're a 17-
year-old, or a breastfeeding teenage mother who has higher caloric needs. The same food is served every single day,
and none of the children receive any fruit and vegetables or any milk... At Clint, I found that hard to do because
there was a stench emanating from some of the children. It was filthy and disgusting and there was, as of last week,
**a flu epidemic at Clint and a lice infestation**. And **children do not have the ability to wash their hands** with
soap at Clint." See https://www.theatlantic.com/family/archive/2019/06/child-detention-centers-immigration-
attorney-interview/592540/.

68.    Flores monitors were permitted to meet with G.M.C.B. They have provided sworn

declarations which are being attached to this complaint. *See* Exhibits C & D. The monitors were

so troubled with the emotional stability of G.M.C.B. that she became labeled in media reports as

the "inconsolable" girl.3

69.    G.M.C.B. initially was unable to participate in monitoring, beginning on June 17, 2019.

Declarant Clara Long states that G.M.C.B.'s eyes were "red" and she was "quiet. Upon being

asked a question she began to wail. In fact, not only cry, but to scream in a "high pitched wail"

loudly for 10 to 15 minutes. Because of her inability to remain stable, she was not able to be

interviewed by inspector at that time. See Declaration of Clara Long at Exhibit D ¶¶ 4-5.

70.    Inspectors returned to find G.M.C.B. concerned for her emotional well being. On

Thursday June 20, 2019, she was again met by inspectors in Clint, Texas. This time she remained

tearful and at times hysterical. She described being separated from her caretaker. She described

being punished for losing a comb by CBP officers, wherein they forced her to sleep on a cold tile

---

3 *See:* https://www.apnews.com/ac73320c272a4a159f9eaf90ec8502bd Girl who was in gov't custody inconsolable,
lawyer says. "Attorneys had said the girl seemed to be at **high risk for emotional trauma last week, when she was
found hysterical, despondent and unkempt in a Clint, Texas,** Border Patrol station... '**All she can do is cry and
cry so much it sounds like she's drowning,**' said the girl's father...The little girl caught the attention of attorneys
interviewing children in the Clint station last week, where they said she burst into tears when they asked her a
question. **They called her father after finding his phone number written on a bracelet she wore labeled "U.S.
parent."** But she could barely talk to him on the phone...**He said when they spoke Saturday she was coughing
and told him that guards had made her sleep on the floor as punishment for misplacing a lice comb a nurse
had given children in her cell.**"

*See also:* https://www.cnn.com/2019/06/24/opinions/children-migrant-centers-at-border-long-austin-
hillery/index.html. "We went to a border detention center for children. What we saw was awful;" In describing
G.M.C.B. they note "**A second-grader we interviewed entered the room silently but burst into tears when we
asked who she traveled with to the US. 'My aunt,' she said, with a keening cry. A bracelet on her wrist had
the words "US parent" and a phone number written in permanent marker. We called the number on the spot
and found out that no one had informed her desperate parents where she was being held.** Some of the most
emotional moments of our visit came witnessing children speak for the first time with their parents on an attorney's
phone."

floor without a blanket or cover. "She recalled that the guard said in an angry voice, 'que si no lo

hallábamos que ibamos a quedar sin cama y sin cobija' [that if we didn't

find it we were going to end up without beds and without blankets]." *See* Declaration of

Katherine Hagan at Exhibit C, ¶ 6.

71.     In recounting the "people" who came into her room, and removed everything, she

became completely distraught. *Id.* They even took the blanket that the children had use to hold

up as a "curtain" while a child had to use the bathroom. As a result, they were forced to use the

bathroom in open view.

72.     G.M.C.B. requested to take a nap during the inspection visit. She slept with her head

resting on a table for at least 40 minutes, likely due to exhaustion. [Exhibit C –Declaration of

Katherine Hagan at ¶ 9]. Additionally, G.M.C.B. indicated during this visit that she was not

feeling well, and in fact she was dizzy. *Id.* at ¶ 14. Officers guarding the visit had to be notified

that she was in need of medical attention and suffieient food. *Id.*

73.     On information and belief, G.M.C.B. was briefly taken to a hospital on June 20, 2019 and

diagnosed with Influenza. She was thereafter returned to the deplorable conditions at Clint for

days thereafter. On information and belief, G.M.C.B. moved out of Clint and was "in transit"

with no information given to H.U.C.U. or M.G.B.V. for four days, at least some of that time in

CBP El Paso Border Station 1 and back to Clint for an undisclosed period of time. She was not

placed in an ORR facility until June 25, 2019. The placement was Upbring in El Paso, a

transitional foster care situation. At no time were her parents called by CBP to offer placement

pursuant to the FSA.

74.     G.M.C.B. remains detained at Upbring today, for no rational, lawful or humane reason.

Her proper placement is, and always has been, with her parents in Washington D.C.

## CLAIMS FOR RELIEF

### COUNT I: VIOLATION OF THE FLORES AGREEMENT – PLACEMENT DECISION UNDER PARAGRAPH 14

75.     All previous paragraphs are incorporated as though fully set forth herein.

76.     The prolonged border detention and horrific treatment of Plaintiff G.M.C.B. at the hands of CBP violates multiple provisions of the FSA.

77.     There were no attempts by the government Defendants to reunify G.M.C.B. with her parents or any other family member, as required under the FSA. Nor did the government Defendants engage in any individualized custody determinations concerning G.M.C.B. with regards to family unity, or even any analysis of whether or not she should have been designated "unaccompanied.". Rather, the government Defendants willfully violated their legal obligations to G.M.C.B. under the FSA.

### COUNT II: VIOLATION OF THE FLORES AGREEMENT – PARAGRAPH 24(B) VIOLATION

78.     All previous paragraphs are incorporated as though fully set forth herein.

79.     The FSA permits a child to contest the placement decision of Defendants. G.M.C.B. is exercising this right.

80.     In 1993 Justice Scalia in *Reno v. Flores* (507 U.S. 292) emphasized the importance of ensuring that minors will be cared for during the pendency of removal proceedings.

81.     In addition, state laws provide both substantive and procedural protections of the rights of parents to care for their children, and of children to be with their parents, such that children may only be separated from their parents as a matter of last resort.

23

82.     The FSA requires the federal government to place children in custody in the least

restrictive setting that is in the best interests of the child, and to grant preference to parents—

without regard to the parents' immigration status—above all other forms of release.

83.     Therefore, the decision to place G.M.C.B. at Upbring in the custody of ORR violated the

FSA.

**COUNT III: VIOLATION OF THE FLORES AGREEMENT –
PARAGRAPH 12 VIOLATION**

84.     All previous paragraphs are incorporated as though fully set forth herein.

85.     G.M.C.B. was, horrifically, deprived of the ability to communicate her parents by CBP as

a form of punishment. In so doing, the government Defendants violated her rights to

communicate freely with her family members as laid out in Pararaph 12 of the FSA.

**COUNT IV: VIOLATION OF DUE PROCESS**

86.     All previous paragraphs are incorporated as though fully set forth herein.

87.     The Due Process Clause of the Fifth Amendment applies to all "persons" in the United

States and applies to G.M.C.B., a minor children.

88.     The designation of G.M.C.B. as an "unaccompanied child" and the failure to release her

to her parents following the trauma inflicted by Defendants unlawful conduct violated the

Plaintiffs; substantive due process because it furthered no legitimate purpose, nor any compelling

governmental interest.

89.     The designation of G.M.C.B. as an "unaccompanied child" and the failure to release her

to her parents also violated the Plaintiffs' procedural due process because it occurred without the

required individualized assessment under the FSA, without justification nor hearing.

**COUNT V: VIOLATION OF THE EIGHT AMENDMENT**

90.     All previous paragraphs are incorporated as though fully set forth herein.

24

91.     The Eighth Amendment to the United States Constitution states that "cruel and unusual punishments [shall not be] inflicted."

92.     The treatment of G.M.C.B. by the Defendants was inhumane, cruel, unusual, inflicted without authority, and an egregouis abuse of a position of power against a vulnerable seven-year old child.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request that the Court grant the following relief:

A.     Assume jurisdiction over this matter;

B.     Declare that Plaintiff G.M.C.B. is not a UAC as defined in the TVPRA, and that ORR have no legal authority to detain her or condition her release to her parents in any manner;

C.     Pending adjudication of this Petition, ORDER G.M.C.B. immediate reunification with her parents at Defendants expense;

D.     Declare the conduct of Defendants with respect to Plaintiffs to violate the Fifth and Eighth Amendments to the U.S. Constitution;

E.     Enjoin Defendants from redetaining Plaintiffs without providing a Consitutionally adequate meaningful process in advance of any effort to re-detain, including meaningful advance notice and an opportunity to be heard before a neutral decisionmaker;

F.     Award Plaintiffs reasonable attorney's fees and costs pursuant to 28 U.S.C. § 2412; and

G.     Award all other relief to Plaintiffs that it deems just, equitable, and proper.

Respectfully submitted this 1st day of July, 2019.

Respectfully Submitted,

By:    /s/ Benjamin G. Messer
        Benjamin G. Messer (DC Bar No. 1026815)
        Yacub Law Offices
        77 S Washington St, Ste 310
        Rockville, MD 20850
        T: 703-533-2347
        F: 703-424-7514
        E: bmesser@yacublaw.com

        *Bridget Cambria (PA Bar No. 205271)
        Aldea – The People's Justice Center
        532 Walnut Street
        Reading, PA 19601
        Phone: (484) 926-2014
        Fax: (484) 926-2032
        E-mail: bridget@aldeapjc.org


        *Gregory P. Copeland (Ny Bar No. 4806485)
        *Sarah T. Gillman (NY Bar No. 3986197)
        NSC Community Legal Defense
        11 Broadway Ste 615
        New York, NY 10004-1490
        Phone (212) 843-0910
        Fax: (212) 257-7033
        E-mail: gregory@nscdefense.org
        E-mail: sarah@nscdefense.org


        *Amy Maldonado (IL Bar No. 6256961)
        Law Office of Amy Maldonado
        333 Albert Avenue, Ste. 610
        East Lansing, MI 48823
        Phone: (517) 803-2870
        Fax: (888) 299-3780
        E-mail: amy@amaldonadolaw.com


ATTORNEYS FOR THE PLAINTIFF
*Motions pro hac vice forthcoming