## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

H.U.C.U. et al.,

       *Plaintiffs*,

          -against-

BARR et al.,

       *Defendants*.

Case: 1:19−cv−01964
Assigned To : Bates, John D.
Assign. Date : 7/1/2019
Description: TRO/Prelim. Injunct. (D−DECK)

**APPLICATION FOR A TEMPORARY
RESTRAINING ORDER**

1.     Plaintiffs in this matter are G.M.C.B., a child widely reported in national news media as an "inconsolable seven-year old" girl unlawfully separated from her relatives and then detained in horrific, abusive and abjectly cruel conditions at U.S. Customs and Border Protection ("CBP") Clint Border Patrol Station, and her parents, H.U.C.U. and M.G.B.V, who are desperate to be reunited and to be able to care for their vulnerable and traumatized child.

2.     Defendants are the federal agencies and officials who unlawfully detained G.M.C.B. in deplorable, unsafe, and unsanitary conditions, in violation of federal law, regulations, the Flores Settlement Agreement[1] (hereinafter "FSA" or the "Settlement"), and the Fifth and Eighth Amendments to the United States Constitution. Defendants include the following agencies and their culpable officials: U.S. Department of Homeland Security ("DHS"); U.S. Immigration and Customs Enforcement ("ICE"); U.S. Customs and Border Protection ("CBP"); U.S. Department of Health and Human Services ("HHS"); and U.S. Office of Refugee Resettlement ("ORR").

---

[1] Arising from longstanding litigation in the matter of *Flores v. Sessions*, CV-85-4544 (C.D. Cal.).

1

3.     By this application for a temporary restraining order pursuant to Federal Rule of Civil Procedure 65(b), Plaintiffs seek the immediate de-designation of G.M.C.B. as an "unaccompanied alien child" ("UAC"), ordering the return to the status quo ex ante prior to G.M.C.B.'s unlawful detention and the re-unification of seven-year old G.M.C.B. with her parents pending the adjudication of their claims.

4.     In compliance with Rule 65(b) and Local Civil Rule 65.1(a), undersigned counsel notified defense counsel of this application and furnished to defense counsel all documents filed in this case, as described on the last page of this document.

## RELIEF REQUESTED

5.     Plaintiffs seek a temporary restraining order requiring Defendants to:

     a.  immediately declare that Plaintiff G.M.C.B. is not an UAC within the statutory definition provided by the "Homeland Security Act (the "HSA"), 6 U.S.C. § 279(g)(2);

     b.  immediately return to the "status quo ante" in which G.M.C.B. has not been designated a UAC or placed in a restrictive detention setting – the "ante" formulation of the status quo in the realm of equities required to prevent Defendants seeking shelter under a current "status quo" precipitated by its wrongdoing;[2]

     c.  provide Plaintiffs with frequent, easily facilitated, and confidential communication pending their reunion.

## FACTS

---

[2] *See Holt v. Cont'l Grp., Inc.*, 708 F.2d 87, 90 (2d Cir. 1983) (referring to reinstatement of benefits as "restoration of the status quo ante"); accord *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1013 (10th Cir. 2004) (en banc) (per curiam) ("requir[ing] a party who has disturbed the status quo to reverse its actions ... restores, rather than disturbs, the status quo ante, and is thus not an exception" to the ordinary standard for preliminary injunctions).

6.     G.M.C.B. is a seven-year-old girl. She is a native and citizen of El Salvador. She is an asylum-seeking child.

7.     G.M.C.B.'s parents reside in Washington, D.C. and are available, now and at all times since G.M.C.B. has been in the United States, to provide care for their daughter.

8.     G.M.C.B. was cared for by her aunt in El Salvador. Their household became subject to severe domestic violence endangering G.M.C.B. and her aunt's safety. G.M.C.B. describes that there were "people who had eyes on her," and that she was no longer safe going to school. As a result, they came to the border of the United States to seek asylum.

9.     On or about June 15, 2019, G.M.C.B. was apprehended by CBP with her aunt and a female cousin. Their family had sought out U.S. border officials to turn themselves in. That night G.M.B.C. and her aunt were made to sleep on the floor of a tent. When G.M.C.B. awoke, her aunt was no longer by her side. *See* Declaration of Katherine Hagan at ECF No. 1-3 ¶ 5.

10.     Thereafter, G.M.B.C. was instructed. to get into a car by herself. She was not permitted to remain with her aunt or her cousin. Reflecting upon this moment causes G.M.B.C. great trauma and pain, as she is often unable to talk about this moment without intense emotion and crying. *Id.*

11.     G.M.B.C. was placed in the Clint Border Station in Clint, Texas following this period in a tent. On information and belief, this occurred on June 16, 2019. While she was detained at this border station, she was without her accompanying family and was placed with hundreds of other children in deplorable conditions.

12.     In detention, her wrist was adorned by a green wristband. On the wristband were written the words "US PARENT" and accompanying that phrase was her father's phone number in the United States. *See* Declaration of Clara Long at ECF No. 1-4.  CBP knew at all times that she

3

had parents in the United States and failed to use that information to timely conduct a proper placement.

13.     Monitors operating pursuant to the FSA were granted access to the facility and conducted inspections on or about the week of June 17, 2019. "The situation we found is unacceptable. US Border Patrol is holding many children, including some who are much too young to take care of themselves, in jail-like border facilities for weeks at a time without contact with family members, regular access to showers, clean clothes, toothbrushes, or proper beds. Many are sick. Many, including children as young as 2 or 3, have been separated from adult caretakers without any provisions for their care besides the unrelated older children also being held in detention…Some of the children we spoke with were sleeping on concrete floors and eating the same unpalatable and unhealthy food for close to a month: instant oatmeal, instant soup and a previously-frozen burrito. Children should spend no more than a few hours in short-term border jails to be processed and US law limits their detention under typical circumstances to 72 hours." *See* https://www.cnn.com/2019/06/24/opinions/children-migrant-centers-at-border-long-austin-hillery/index.html.

14.     The inspectors noted that many of the children in Clint, like the Plaintiff, have family and even parents in the United States. "Based on our interviews, officials at the border seem to be making no effort to release children to caregivers-- many have parents in the US -- rather than holding them for weeks in overcrowded cells at the border, incommunicado from their desperate loved ones." *Id.*[3]

---

[3] Media reports are replete with articles describing the horrendous conditions in Clint. Many are referenced in Foonote 1. In addition, Elora Mukherjee, a professor at Columbia Law School and the director of the school's Immigrants' Rights Clinic provided a first hand account to the Atlantic, " **Children were dirty, They Were Scared,** **They Were Hungry.**" She provided her observations, "An overwhelming number of children who I interviewed had not had an opportunity for a stable shower or bath since crossing the border [days or weeks earlier]. They were wearing the same clothing that they had crossed the border in. Their clothing was covered in bodily fluids, including urine and breast milk for the teenage moms who are breastfeeding.

15.     Flores monitors were permitted to meet with G.M.C.B. They have provided sworn

declarations which are being attached to this complaint. *See* Exhibits 3 & 4. The monitors were

so troubled with the emotional stability of G.M.C.B. that she became labeled in media reports as

the "inconsolable" girl.[4]

16.     G.M.C.B. initially was unable to participate in monitoring, beginning on June 17, 2019.

Declarant Clara Long states that G.M.C.B.'s eyes were "red" and she was "quiet. Upon being

asked a question she began to wail. In fact, not only cry, but to scream in a "high pitched wail"

loudly for 10 to 15 minutes. Because of her inability to remain stable, she was not able to be

interviewed by the inspector at that time. See Declaration of Clara Long at Exhibit 4 ¶¶ 4-5.

17.     Inspectors returned to find G.M.C.B. concerned for her emotional well-being. On

Thursday June 20, 2019, she was again met by inspectors in Clint, Texas. This time she remained

tearful and at times hysterical. She described being separated from her caretaker. She described

---

Nearly every child I spoke with said that they were hungry because they're being given insufficient food. The food at Clint is rationed on trays. Everyone gets an identical tray regardless of if you're a 1-year-old, or you're a 17-year-old, or a breastfeeding teenage mother who has higher caloric needs. The same food is served every single day, and none of the children receive any fruit and vegetables or any milk... At Clint, I found that hard to do because there was a stench emanating from some of the children. **It was filthy and disgusting and there was, as of last week, a flu epidemic at Clint and a lice infestation.** And children do not have the ability to wash their hands with soap at Clint." See https://www.theatlantic.com/family/archive/2019/06/child-detention-centers-immigration-attorney-interview/592540/.

[4] *See*: https://www.apnews.com/ac73320c272a4a159f9eaf90ec8502bd Girl who was in gov't custody inconsolable, lawyer says. "Attorneys had said the girl seemed to be at **high risk for emotional trauma last week, when she was found hysterical, despondent and unkempt in a Clint, Texas,** Border Patrol station... '**All she can do is cry and cry so much it sounds like she's drowning,**' said the girl's father...The little girl caught the attention of attorneys interviewing children in the Clint station last week, where they said she burst into tears when they asked her a question. **They called her father after finding his phone number written on a bracelet she wore labeled "U.S. parent."** But she could barely talk to him on the phone...**He said when they spoke Saturday she was coughing and told him that guards had made her sleep on the floor as punishment for misplacing a lice comb a nurse had given children in her cell.**"

*See also:* https://www.cnn.com/2019/06/24/opinions/children-migrant-centers-at-border-long-austin-hillery/index.html. "We went to a border detention center for children. What we saw was awful;" In describing G.M.C.B. they note "**A second-grader we interviewed entered the room silently but burst into tears when we asked who she traveled with to the US. 'My aunt,' she said, with a keening cry. A bracelet on her wrist had the words "US parent" and a phone number written in permanent marker. We called the number on the spot and found out that no one had informed her desperate parents where she was being held.** Some of the most emotional moments of our visit came witnessing children speak for the first time with their parents on an attorney's phone."

being punished for losing a comb by CBP officers, wherein they forced her to sleep on a cold tile floor without a blanket or cover. "She recalled that the guard said in an angry voice, 'que si no lo hallábamos que ibamos a quedar sin cama y sin cobija' [that if we didn't find it we were going to end up without beds and without blankets]." *See* Declaration of Katherine Hagan at Exhibit 3, ¶ 6.

18.     In recounting the "people" who came into her room, and removed everything, she became completely distraught. *Id.* They even took the blanket that the children had use to hold up as a "curtain" while a child had to use the bathroom. As a result, they were forced to use the bathroom in open view.

19.     G.M.C.B. requested to take a nap during the inspection visit. She slept with her head resting on a table for at least 40 minutes, likely due to exhaustion. *See* Declaration of Katherine Hagan at Exhibit 3, ¶ 9. Additionally, G.M.C.B. indicated during this visit that she was not feeling well, and in fact she was dizzy. *See* Declaration of Katherine Hagan at Exhibit 3, ¶ 14. Officers guarding the visit had to be notified that she was in need of medical attention and sufficient food. *Id.*

20.     On information and belief, G.M.C.B. was briefly taken to a hospital on June 20, 2019 and diagnosed with Influenza. She was thereafter returned to the deplorable conditions at Clint for days thereafter. On information and belief, G.M.C.B. was held in Clint and another place in El Paso (El Paso 1) for periods of time. She was not placed in an ORR facility until June 25, 2019. The placement was Upbring in El Paso, a transitional foster care situation. At no time were her parents called by CBP to offer placement pursuant to the FSA.

21.     G.M.C.B. remains detained at Upbring today, for no rational, lawful or humane reason. Her only lawful proper placement is, and always has been, with her parents in Washington D.C.

## JURISDICTION

22.     The Court has jurisdiction to enjoin unconstitutional action by the Defendant federal

agencies. *Trudeau v. Fed. Trade Commn.*, 456 F.3d 178, 190 (D.C. Cir. 2006). The government

has waived sovereign immunity from suits directly under the Constitution that seek equitable

relief. *Id.* at 186 (citing 5 U.S.C. § 702).  Plaintiffs invoke this jurisdiction to redress Defendants'

Fifth and Eighth Amendment violations.

## STANDARD OF REVIEW

23.     "The court considers the same factors in ruling on a motion for a temporary restraining

order and a motion for preliminary injunction." *Baker DC v. Nat'l Labor Relations Bd.*, 102 F.

Supp. 3d 194, 198 (D.D.C. 2015).

24.     Courts "consider four factors when deciding whether to grant a preliminary injunction:

whether the plaintiff will be irreparably harmed if the injunction does not issue; whether the

defendant will be harmed if the injunction does issue; whether the public interest will be served

by the injunction; and whether the plaintiff is likely to prevail on the merits." *Univ. of Tex. v.

Camenisch*, 451 U.S. 390, 392 (1981).

25.     These factors "interrelate on a sliding scale and must be balanced against each other."

*Davenport v. Int'l Bhd. of Teamsters*, 166 F.3d 356, 361 (D.C. Cir. 1999). "A district court must

balance the strengths of the requesting party's arguments in each of the four required areas."

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

26.     The court may include mandatory relief regarding immigration detention in a temporary

restraining order. *See, e.g., You v. Nielsen*, 321 F. Supp. 3d 451, 469 (S.D.N.Y. Aug. 2, 2018);

*Mahmood v. Nielsen*, 17-cv-8233, 2018 WL 2148439 at *2 (S.D.N.Y. May 9, 2018).

## ARGUMENT

27.     Plaintiffs seek their lawful entitlement to the law, and that the law be lawfully applied –

Defendants arbitrary and capricious decision to designate G.M.C.B. as a UAC is clearly contrary

to law.  Defendants cruel and harmful treatment of G.M.C.B. in violation of the FSA, the

Trafficking Victims Protection Reauthorization Act ("TVPRA") and HSA, the Fifth and Eighth

Amendments, and basic human decency in their conscious shockingly appalling treatment of

G.M.C.B. during her prolonged unlawful detention is served by no legitimate government

purpose, and all factors for issuing granting immediate relief favor Plaintiffs in the most

profound manner.

### *Plaintiffs are Suffering Immediate, Ongoing, Irreparable Harm*

28.     The facts surrounding Defendants' treatment of the Plaintiffs have profoundly shocked

the national conscious – for good reason.  Defendants' treatment of G.M.C.B. and her parents are

not simply unlawful, but malevolent and despicable – no vulnerable seven-year old child,

recently torn from her caretaker, who contracts influenza due to the unsafe and unsanitary

conditions in detention – jailed in facilities for 10-days that are only permitted to be used for 72-

hours – should be forced to sleep on the cold floor without any blankets or bedding as

punishment for losing a comb provided to a crowded room of children to share during a lice

outbreak.  The government utterly failed in treating G.M.C.B. with any manner of dignity.  No

legitimate or rational purpose supports doing anything other than immediately returning

G.M.C.B. to the care of her parents, uniformly depicting irreparable harm that justice

29.     The trauma suffered by G.M.C.B., as detailed above, has been profound, and the

encroachment on her right to family unity, the multiple violations of the FSA calculated to

protect vulnerable children such as G.M.C.B, demonstrate irreparable harm and a plea of

humanity to law to immediately stop the continuing injustice.

30.     Courts uniformly recognize that separation causes trauma, as does uncertainty about
family members. *See also Stanley v. Illinois*, 405 U.S. 645, 647 (1972) ("[P]etitioner suffers
from the deprivation of h[er] child[], and the child[] suffer[s] from uncertainty and dislocation.");
*J.B. v. Washington County*, 127 F.3d 919, 925 (10th Cir.1997) ("[F]orced separation of parent
from child, even for a short time, represents a serious infringement upon both the parents' and
child's rights."); *Nicolson v. Pappalardo*, 685 F. Supp. 2d 142, 145-46 (D. Me. 2010) ("[e]very
additional day" of separation causes further harm).

31.     "[L]oss of constitutional freedoms, for even minimal periods of time, unquestionably
constitutes irreparable injury." *Mills v. Dist. of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009)
(citations omitted).  As a result, "[w]hen an alleged deprivation of a constitutional right is
involved, most courts hold that no further showing of irreparable injury is necessary." 11A
WRIGHT &MILLER, FED. PRAC. &PROC. § 2948.1 (2d ed. 2004).

32.     "Except in the most dreadful circumstances, a court should not countenance the cruelty of
the separation of a parent and child by the government." *D.J.C.V. v. U.S. Immigration and
Customs Enforcement*, No. 18 Civ. 9115, ECF No. 21 (S.D.N.Y. Oct. 15, 2018) (Hellerstein,
J.); *see also Cruz Paz v. Lloyd et al.*, No. 18 Civ. 8993, ECF No. 11 (S.D.N.Y. Oct. 5, 2018)
(Crotty, J.); *Paixao v. Sessions et al.*, No. 18 Civ. 4591, ECF No. 16 (N.D. Ill. July 5, 2018)
(Shah, J.); and *Souza v. Sessions et al.*, No. 18 Civ. 4412, ECF No. 23 (N.D. Ill. Jun. 26, 2018)
(Shah, J.).

33.     Plaintiffs therefore clearly establish continuing irreparable harm that strongly favors the
Court granting their request for immediate relief.

*Plaintiffs Are Likely to Success on the Merits of their Claims*

34.     Plaintiffs will almost certainly prevail on their claims that G.M.C.B.'s detention by ORR

is not lawful because she is not a UAC, and therefore no provision of the HSA or TVPRA

empowers ORR to detain a child who, like GMCB, is not a UAC.  Without statutory power,

ORR has no authority over G.M.C.B. *See La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374,

(1986). ("But 'an agency literally has no power to act . . . unless and until Congress confers

power upon it.")  Accordingly, G.M.C.B. must be immediately released into the custody of her

parents who seek to provide her the care she has not been provided by Defendants.

35.     Pursuant to the HSA and TVPRA, ORR is responsible for the custody and placement of

UACs.  The HSA defines a UAC as a child who has "no parent or legal guardian in the United

States; or (ii) no parent or legal guardian in the United States is available to provide care and

physical custody." 6 U.S.C. § 279(g)(2).

36.     The TVPRA incorporates the HSA's definition of UAC by reference. *See* 8 U.S.C. §

1232(g). Given that G.M.C.B.'s parents are present in the United States and desperate to provide

her care, she is not a UAC. *See* 6 U.S.C. § 279(g)(2)(C)(i).

37.     As the Plaintiffs' are almost certain to succeed on establishing the fact that G.M.C.B. is

not a UAC, Plaintiffs are very likely to succeed on challenging ORR's detention or conditions

imposed prior to releasing G.M.C.B. as no provision of the HSA or TVPRA empower ORR to

detain a child who, like G.M.C.B., is not a UAC.

38.     Plaintiffs are also likely to succeed on the merits of their challenges to Defendants'

violations of the FSA.  Defendants have consistently violated the FSA for years. *See Flores v.

Barr et al.*, No. Civ. 85-4544-DMG, Order (C.D. Cal. June 28, 2019) (detailing prior court orders

finding CBP continuing to breach FSA over time, and plaintiffs' claims that CBP continued to

commit the same violations). Indeed, they continue to do so with regards to G.M.C.B. today, and every second she is not placed with her mother and father.

39.     Finally, Plaintiffs will also succeed on their claims that Defendants have violated the Fifth and Eighth Amendments. The punishment of a seven-year old recently diagnosed with influenzas of being forced to sleep on the cold tile floor for losing a comb by a CBP officer is conscious shocking, cruel, unusual, and outrageous government conduct in violation of the Fifth and Eighth Amendments.

*The Balance of Harms and Public Interest Favor Ending Defendants Cruel Separation of*
*Plaintiffs' Family*

40.     The government itself, of which Defendants are a part, has an important interest in promoting family integrity:

> the state also shares the interest of the parent and child in their
> family's integrity, *see Santosky [v. Kramer*, 455 U.S. 745, 766-67
> (1982)] ("the parens patriae interest favors preservation, not
> severance of natural familial bonds"), because the welfare of the
> state depends in large part on the strength of the family.

*Jordan by Jordan v. Jackson*, 15 F.3d 333, 346 (4th Cir. 1994); *see also id.* ("The forced separation of parent from child, even for a short time, represents a serious impairment on [parental] rights."). This basic commitment to family values, enshrined in our Constitution, expresses the public interest in this case. *See League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("[T]here is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'") (citation omitted).

41.     Defendants cannot name any harm that they could face by an order requiring them to comply with the law and immediately de-designate G.M.C.B. as a UAC, release her from ORR

custody, to effectuate a return to the *status quo ex ante*.  The Defendants have wholly lost

credibility as to any argument in delaying reuniting the Plaintiffs' family due to any purported

safety or health concerns.

## CONCLUSION

42.    Plaintiffs urge the Court to enter immediate relief and order the de-designation of

G.M.C.B. as a UAC and the reunification of Plaintiffs' family while the other claims in their

Petition are adjudicated by the Court.

Respectfully submitted this 1st day of July, 2019.

> Respectfully Submitted,
> By:___ /s/ Benjamin G. Messer
> Benjamin G. Messer (DC Bar No. 1026815)
> Yacub Law Offices
> 77 S Washington St, Ste 310
> Rockville, MD 20850
> T: 703-533-2347
> F: 703-424-7514
> E: bmesser@yacublaw.com
>
> *Bridget Cambria (PA Bar No. 205271)
> Aldea – The People's Justice Center
> 532 Walnut Street
> Reading, PA 19601
> Phone: (484) 926-2014
> Fax: (484) 926-2032
> E-mail: bridget@aldeapjc.org
>
> *Gregory P. Copeland (Ny Bar No. 4806485)
> *Sarah T. Gillman (NY Bar No. 3986197)
> NSC Community Legal Defense
> 11 Broadway Ste 615
> New York, NY 10004-1490
> Phone (212) 843-0910
> Fax: (212) 257-7033
> E-mail: gregory@nscdefense.org
> E-mail: sarah@nscdefense.org
>
> *Amy Maldonado (IL Bar No. 6256961)
> Law Office of Amy Maldonado
> 333 Albert Avenue, Ste. 610

East Lansing, MI 48823
Phone: (517) 803-2870
Fax: (888) 299-3780
E-mail: amy@amaldonadolaw.com

ATTORNEYS FOR THE PLAINTIFF
*Motions pro hac vice forthcoming*

## CERTIFICATE OF NOTICE TO DEFENDANTS

I, Benjamin G. Messer, counsel for Plaintiffs, certify that I took the following actions to furnish

the information and documents to the adverse parties as required by Local Civil Rule 65.1(a):

On June 28, 2018, I informed Sarah B. Fabian, Senior Litigation Counsel in the U.S. Department of

Justice's Office of Immigration Litigation by email on sarah.b.fabian@usdoj.gov.  I informed Ms.

Fabian that I represent the Plaintiffs in a case.  I indicated that Plaintiffs intend to seek a temporary

restraining order and offered to email her all filings to date, or to communicate this information to

any other appropriate counsel at Department of Justice. Ms. Fabien ~~responded that~~ *did not respond.*

[XXXXXXXXXXXXXXXXXX]

If the Court sets this application for hearing, undersigned counsel will immediately notify Ms. Fabian

by email and telephone.

I also certify that I will serve Defendants with all documents as required by the Federal Rules of

Civil Procedure.

*/s/ Benjamin G. Messer*
Benjamin G. Messer (DC Bar No. 1026815)

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| H.U.C.U. et al. , | |
| *Plaintiffs*, | |
| -against- | |
| BARR et al., | Case No. |
| *Defendants*. | **[PROPOSED] ORDER** |

Upon consideration of Petitioners' Application for a Temporary Restraining Order pursuant to pursuant to Federal Rule of Civil Procedure 65(b) and Local Civil Rule 65.1(a), the Petition for Judicial Review of Placement Determination Pursuant to Flores Settlement Agreement and Complaint Seeking Declaratory and Injunctive Relief ("Petition") (ECF No. 1) and exhibits thereto, IT IS HEREBY ORDERED that:

1. Defendants are ORDERED to de-designate G.M.C.B. as a "unaccompanied alien child" ("UAC");

2. Defendants are ORDERED to return Plaintiffs to *the status quo ex ante*, in which G.M.C.B. has not been designated a UAC or placed in a restrictive detention setting – permitting her to immediately be reunited with her parents;

3. Defendants are ORDERED to provide Plaintiffs with frequent, easily facilitated, and confidential communication pending their reunion.

4. Defendants shall file a return on Plaintiffs' Petition by _____;

1

5.  Plaintiffs shall have the opportunity to file a reply, if any, by _____;

6.  This matter shall be heard by the Court on _____;

7.  And such other and further relief as the Court may find appropriate;

8.  It is further ORDERED that security in the amount of $_____be posted by the

    Petitioner prior to_____at_____o'clock in the_____noon of that day;

9.  Service of this Order shall be effected by Petitioner by electronic mail on the United

    States Attorney for the District of Columbia by____am/pm on_____and shall

    constitute good and sufficient service.

    IT IS SO ORDERED:

    Dated:_____          _____

                                     UNITED STATES DISTRICT JUDGE

2